**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
Rick Antonoff
Evan J. Zucker

*Attorneys for Yuri Vladimirovich Rozhkov
in his Capacity as Trustee and Foreign
Representative for the Debtor*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:

        **NATALIA PIROGOVA**,

        Debtor in a Foreign Proceeding.

------------------------------------------------------------x

Chapter 15

Case No. 18-_____ ( )

### DECLARATION OF SERGEY S. SOKOLOV
### IN SUPPORT OF VERIFIED PETITION AND RECOGNITION HEARING

I, Sergey S. Sokolov, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1.    I am a Managing Director of Russian Practice of M&S Law, LLC d/b/a Marks & Sokolov, LLC ("M&S"), a law firm with offices in Moscow, Russia and Philadelphia, Pennsylvania. I graduated from the Law School of St. Petersburg State University, summa cum laude, in 1993. I also received a bachelor's degree from the School of Economics at St. Petersburg State University. I have 25 years of experience in legal practice. I prepared expert opinions on Russian law in *Belikov v. Huhs* heard in the Superior Court of the State of Washington, *Sullivan and Cromwell LLP v. James C. Justice II, et al.,* AAA case 01-15-0002-9299, *In Re the Application of Natalia Potanina for an Order to Take Discovery Pursuant to 28 USC 1782(a)*, 14-MC-31

1

(LAP) 14-MC-57 (LAP) in the United States District Court of the Southern district of New York. Additionally, I provided a declaration concerning Russian law in connection with the chapter 15 petition for recognition of the Russian insolvency proceeding pending against the Foreign Economic Industrial Bank Limited, "Vneshprombank" Ltd. and an expert declaration in connection with a foreign representative's motion to recognize a Russian court decision in the chapter 15 proceeding of Sergey Petrovich Poymanov pending in the United States Bankruptcy Court for the Southern District of New York. *See In re Foreign Economic Industrial Bank Limited, "Vneshprombank" Ltd.*, Case No. 16-13534-mkv, Dkt. No. 5 (Bankr. S.D.N.Y.); *In re Sergey Petrovich Poymanov*, Case No. 17-10516-mkv, Dkt. No. 88 (Bankr. S.D.N.Y.). I have also prepared expert opinions on Russian law in confidential arbitrations. I maintain a practice in litigation, M&A, commercial real estate, international trade and bankruptcy, including under Federal Law № 127-FZ "On Insolvency (Bankruptcy)" (the "Russian Bankruptcy Law"). An English translation of the Russian Bankruptcy Law, as published by the Russian State Corporation "Deposit Insurance Agency" on their website https://www.asv.org.ru/en/legislation/127-FZ_1.rtf is attached hereto as Exhibit A.

2. Although my native language is Russian, I am fluent in English, and have elected to execute and submit this declaration in English.

3. I submit this declaration in support of the *Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding* filed contemporaneously herewith.

4. This declaration is comprised of matters that are statements of legal opinion and/or statements of fact. Where the statements are legal opinion, such statements represent my view of Russian law as a practicing lawyer. To the extent the statements are statements of fact, they are statements based upon my personal knowledge or based upon documents and/or information

supplied to me by or on behalf of Mr. Yuri Rozhkov, the financial trustee and foreign representative (in such capacity, the "Trustee") of Ms. Natalia Pirogova, and are true to the best of my knowledge, information and belief. M&S has been retained by the Trustee to serve as his Russian legal counsel in connection with this chapter 15 proceeding.

I. **OVERVIEW OF RUSSIAN BANKRUPTCY LAW APPLICABLE TO BANKRUPTCY OF INDIVIDUALS**

5.  Since October 1, 2015, Russian law allows certain forms of bankruptcy procedures in respect of non-entrepreneur individuals (*i.e.* individuals who are not registered for carrying out business activities). The Russian Bankruptcy Law is the principal statute governing insolvency for individuals in Russia, and specifically Chapter X with respect to individuals. *See* Article 213.1 of the Russian Bankruptcy Law. In Russia, the state commercial "arbitrazh courts" (also known as arbitration courts), such as the Moscow Arbitrazh Court, have, pursuant to the Russian Bankruptcy Law, exclusive jurisdiction over insolvency cases, including bankruptcy of individuals. *See* Articles 32 and 33 of the Russian Bankruptcy Law.

A.  **The Commencement of an Insolvency Proceeding**

6.  Bankruptcy procedures in respect of an individual in Russia may be commenced by application of the individual or by his or her creditors.

7.  A creditor may commence an involuntary bankruptcy proceeding against an individual if that individual's debt exceeds RUB 500,000 (approximately $8,800)[1] and is overdue for more than three months. *See* Article 213.3(2) of the Russian Bankruptcy Law. As a general rule, the debt shall be confirmed by a judgment or an arbitral award whose enforcement was granted by a Russian court. *See* Article 213.5 of the Russian Bankruptcy Law. There are certain

---

[1] All conversions of rubles to dollars referenced herein are calculated based on the Central Bank of Russia's official exchange rate as February 21, 2018

3

exceptions to the rule requiring a creditor to obtain a court judgement before commencing an involuntary bankruptcy proceeding including where a bank's claim is based on a credit agreement or where a claim is based on a notarized transaction. *See* Section 2 of Article 213.5 of the Russian Bankruptcy Law.

    B.    **Overview of the Administration of an Insolvency Proceedings**

8.    If the court finds that the bankruptcy petition has merit, the following insolvency procedures may be applicable:

    a   Debt Restructuring;
    b   Sale of assets; or
    c   Settlement agreement.

*See* Article 213.2 of the Russian Bankruptcy Law. A copy of the court's order accepting the petition is published in the Unified Federal Register of Bankruptcy Data and the "Kommersant" newspaper.

9.    Once a petition is accepted, the court appoints a financial administrator (similar to that of a trustee in bankruptcy). In order to ensure that the rights of all creditors are protected the financial administrator, among other things, shall timely verify creditors' claims filed against a debtor and shall manage the bankruptcy estate. Toward that end, a bar date for the filing of claims is established and a meeting of creditors is held to discuss the financial condition of the debtor.

10.    The Russian Bankruptcy Law provides a controlled procedure designed to maximize the value of an insolvent individual's assets, to provide an equitable distribution among an insolvent individual's creditors, and, where an insolvent individual acts in good faith and doesn't violate the Russian Bankruptcy Law, to release the individual from the debts that remained unsettled upon realization of an insolvent individual's property.

11. Furthermore, the financial administrator is authorized to take measures necessary to search, find and recover a debtor's assets possessed by third parties and pursues actions against persons that contributed to an individual's insolvency.

C. **The Financial Administrator's Role in Insolvency Proceeding**

12. In practice, bankruptcy proceedings in respect of an individual normally start with initiation of restructuring of debts procedure (and then continues with either a plan of restructuring, if approved by the court, or declaration of the debtor being bankrupt and realization of the debtor's property). Articles 213.2, 213.6, 213.17, 213.24 of Bankruptcy law. During the course of a debt restructuring, a moratorium on payment of debts is introduced and no interests and penalties accrue on any claims (except for post-commencement claims), while the financial administrator analyzes the debtor's financial situation. The goal of the debt restructuring is for the debtor and his or her creditors to work out a plan providing for the repayment of debts (a creditor may consent to receipt of a lesser amount) during a period that cannot exceed three years. Article 213.14(2) of the Russian Bankruptcy Law. A plan requires the approval of a majority of the votes of all creditors who filed claims with the court. Article 213.16 of the Russian Bankruptcy Law. A Russian bankruptcy court will approve a plan if it finds, among other things, that the plan is feasible and does not breach the rights of third parties. Article 213.18 of the Russian Bankruptcy Law.

13. If the plan of restructuring is not approved, or such plan is approved but was later annulled by the court, or under certain other grounds provided for by the law, the court will declare a debtor bankrupt and commence procedures for the financial administrator to sell the debtor's assets. Articles 213.22 and 24 of the Russian Bankruptcy Law. Although not explicitly provided by the Bankruptcy law, in practice it is also possible that the court will initiate this procedure without first attempting a restructuring of debts.

14. Once the debtor is declared bankrupt, it is the financial administrator who exercises all rights with respect to the property making up the bankruptcy estate and who is entitled to collect and dispose of such property for the benefit of the debtor's creditors. Articles 213.25(5) and 213.26 of the Russian Bankruptcy Law. Any money due to the debtor and collected by the financial administrator during the course of the bankruptcy is part of the bankruptcy estate, to be administered by the financial administrator.

15. The bankruptcy estate comprises all assets of the individual debtor. There are certain exemptions including: (a) certain limited personal property, (b) property not authorized to be sold in commerce (e.g. certain drugs, weapons), and (c) certain other types of property or income that cannot be subject to enforcement, such as homes/apartments (unless for claims by mortgagees) and land plots underneath such home, if the debtor does not have any other premises as the debtor's dwelling. Articles 131 and 213.25(3) of the Russian Bankruptcy Law, Article 446 of the Civil Procedure Code of the Russian Federation dated November 14, 2002, No. 138-FZ.

16. During a debtor's insolvency proceeding, any transaction made by the debtor without the financial administrator's approval with respect to an estate asset is deemed null and void. Article 213.25(5) of the Russian Bankruptcy Law. The financial administrator, as part of his right to administer the bankruptcy estate for the benefit of creditors, has the right to challenge improper transfers by a debtor. Articles 213.9(7), 213.25(5) and 213.25(6) of the Russian Bankruptcy Law.

17. It is the financial administrator who is authorized under the Russian Bankruptcy Law to bring claims on behalf of the debtor with respect to the Debtor's assets. Article 213.25(5) and (6) of the Russian Bankruptcy Law. Specifically, the financial administrator is authorized to, among other things, (a) commence and conduct court proceedings with respect to any of the

debtor's pecuniary rights (including for recovery of any assets and debts due to the debtor), (b) exercise all of the debtor's corporate rights and (c) dispose of any of the debtor's funds placed in bank accounts or deposits for the benefit of the debtor's creditors. Article 213.25(6) of the Russian Bankruptcy Law. Accordingly, by virtue of law the financial administrator is the only person authorized to represent the debtor and its bankruptcy estate in any foreign insolvency proceedings including proceedings under Chapter 15 of title 11 of the United States Bankruptcy Code.[2]

18. Creditors may apply to have their claims included in the register of creditors' claims (and in order to participate in the first creditors' meeting) within 2 months after the date when information about initiation of an individual's bankruptcy is published. If the 2 months term is missed for good reason, it may be reinstated by the court. *See* Article 213.8, Section 2, of the Russian Bankruptcy Law. The court shall also consider whether a late creditor's claim is justified and deserves to be included in the register of claims or if it should be excluded. Article 71 and Article 213.8, Section 2, of the Russian Bankruptcy Law.

19. The financial administrator shall hold the first meeting of creditors within 60 days upon expiration of the 2 months term set for creditors to apply for inclusion of their claims into the register. Article 213.12, Section 5, of the Russian Bankruptcy Law. At the meeting of creditors, among other things, the financial administrator shall provide to the creditors a report on fulfillment of its duties and provide suggestions for whether to apply to the court for approval of a plan of restructuring or to apply for a liquidation of the debtor's assets. Article 213.8, Section 2, of the Russian Bankruptcy Law. If the court approves the plan of restructuring, the financial

---

[2] In furtherance of ancillary foreign proceedings, the Russian Bankruptcy Law provides that "[t]he decisions of foreign states' courts on insolvency (bankruptcy) cases shall be recognized in the territory of the Russian Federation in compliance with the international treaties of the Russian Federation. In case of lack of international treaties of the Russian Federation the decisions of foreign states' courts on insolvency (bankruptcy) cases shall be recognized in the territory of the Russian Federation on the basis of reciprocity." *See* Article 1 of the Russian Bankruptcy Law.

7

administrator, not later than one month before the end of the term of the plan, shall provide to the court and to the creditors a report on the results of fulfillment of the plan. Upon consideration of the results of fulfillment of the plan, the court shall either close the proceedings (in case the indebtedness has been repaid in accordance with the plan) or cancel the plan, declare the debtor bankrupt and initiate liquidation of the debtor's assets. Article 213.22 of the Russian Bankruptcy Law.

20. Where the court initiates a liquidation of the debtor's assets, creditors are again entitled to apply for inclusion of their claims into the register of creditors within 2 months after publication of the liquidation notice. *See* Interpretation given by Plenum of the Supreme Court in the Decree dated 13 October 2015 No 45, Section 24. All the property of the debtor known at the date of the decision of the court to declare the debtor bankrupt and initiation of realization of the debtor's property constitute the insolvent assets which are liquidated at auction. Articles 110, 111, 213.26 of Russian Bankruptcy Law.

21. After the financial administrator liquidates the debtor's assets and distributes the proceeds to creditors, the financial administrator submits a report to the court summarizing results of the bankruptcy proceeding. Article 213.31 of the Russian Bankruptcy Law. After the court has considered the report, the court decides whether to discharge the debtor from claims that were not satisfied by the sale of the debtor's assets and will close the bankruptcy case. Article 213.28 of the Russian Bankruptcy Law. The court will not release the debtor from these obligations if the debtor acted unlawfully or in bad faith while undertaking or performing her obligations during the bankruptcy proceedings. A Bankruptcy case may also be closed as a result of a settlement agreement between the debtor and her creditors that is approved by the court. Articles 150 and 213.31 of Bankruptcy law.

      D.      **Financing of Individual's Bankruptcy Proceedings**

22.     Generally, the costs of conducting bankruptcy proceedings shall be paid at the expense of the debtor. Article 20.7, Section 1, of the Russian Bankruptcy law. The Russian Bankruptcy Law also enables the creditors to bear such costs, including the compensation of the financial administrator and his professionals, under certain conditions. Article 213.5, Sections 4 and 5, of the Russian Bankruptcy Law.

23.     Typically, in a personal bankruptcy proceeding for a financial administrator to retain a third-party professional to assist with his fiduciary duties, the financial administrator must apply to the court and prove that there are reasonable grounds to engage the profession and that their compensation is reasonable. Additionally, the debtor must consent to such retention. However, where a creditor (or creditors) agrees to pay at its (their) costs for the financial administrator's retention of professionals, neither the order of a court nor consent of the debtor is required. Article 213.9, Section 6, of the Russian Bankruptcy Law. Therefore, creditors may undertake to pay at their own account for the services of persons engaged to support financial trustee in fulfilling its obligations under the Russian Bankruptcy Law.

II.     **GENERAL BACKGROUND CONCERNING THE DEBTOR**

24.     Natalia Pirogova is a USSR born Russian citizen. Ms. Pirogova is married and has one child, Rostislav Pirogov. Rostislav was born in 1987 and is now married, living in Moscow, with his wife and two children.

25.     Ms. Pirogova's last known registered address is 3rd Frunzenskaya Street, 19, Apt. 17, Moscow, Russia.[3]  Ms. Pirogova also owns an apartment located at Verhniye Polya street, 14, Apt 266, Moscow Russia and has leased at least four other apartments in Moscow.[4]  Additionally, she owns shares in a number of Russian companies registered or located in Moscow.

III.    **EVENTS LEADING UP TO, AND THE CURRENT STATUS OF, THE RUSSIAN BANKRUPTCY PROCEEDING**

26.     Ms. Pirogova is a notorious borrower of money and is wanted on charges of large scale credit fraud.  In connection with her investments, she created and was the managing member of numerous companies created in various countries.  The collection of companies established was created to shield Ms. Pirogova's ownership and identity from creditors.  Additionally, in order to further conceal her ownership, Ms. Pirogova has used nominee agreements in which title was held in the name of a third party but Ms. Pirogova retained all beneficial and economic interest.

A.      **Ms. Pirogova Purchases and Sells Property on Madison Avenue**

27.     On or about March 8, 2007, Ms. Pirogova created NMP-Group LLC, a New York limited liability company, for the purpose of acquiring, owning, developing and managing the unimproved real property located at 172-174 and 176 Madison Avenue, New York, New York (a/k/a 21 East 33rd Street) (the "**Madison Avenue Property**").  Ms. Pirogova intended to develop the Madison Avenue Property as a mixed-use building for retail and condominiums.  NMP-Group LLC defaulted on a secured loan that pledged the Madison Avenue Property as collateral and filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York to stay the foreclosure of the property.

---

[3] As set forth below, a warrant for arrest has been issued against Ms. Pirogova and Moscow authorities are currently investigating her location

[4] Upon information and belief, Ms. Pirogova's family members hold title to additional properties in Moscow. Although unknown, it is possible that such family members hold the title as nominee for Ms. Pirogova. The properties include a $4 million dollar apartment in Moscow. The propriety of their ownership interest is part of the Foreign Representative's investigation.

10

28. In 2013, NMP-Group LLC, through its bankruptcy proceeding, sold the Madison Avenue Property to Madison 33 Owner, LLC. During the sale process, Ms. Pirogova indicated that Madison 33 Owner, LLC is a joint venture affiliated with Luiza Dubrovsky (NMP-Group's manager) and "one or more additional parties." Madison 33 Owner, LLC is solely owned by Madison 33 Partners, LLC. 172 Madison NP Member LLC holds a 40% interest in Madison 33 Partners, LLC and is solely owned by 172 Madison NP Holding LLC.

29. In December 2013, Ms. Dubrovsky and Ms. Pirogova entered into a nominee agreement in which the parties agreed that Ms. Dubrovsky's 100% equity stake in 172 Madison NP Holding LLC was in fact owned by Ms. Pirogova.

30. Therefore, Ms. Pirogova, through NMP-Group LLC, indirectly sold the Madison Avenue Property to an entity partially owned by Ms. Pirogova.

31. In addition to the Madison Avenue Property, it is believed that Ms. Pirogova either personally, through a nominee or a holding company, owns additional properties in New York and Florida. Ms. Pirogova also owns property and has numerous financial interests in Russia.

B. **Ms. Pirogova Guarantees and Defaults on Two Multi-Million Dollar Loans and Misappropriates the Proceeds of the Loans**

32. Ms. Pirogova and her husband, Aleksander Fiskin, were also the co-owners of Rizalti-Plus-DKD ("Rizalti"), an infrastructure construction company and supplier of equipment for oil and gas fields in several Russian regions.

33. On April 16, 2007, Rizalti entered into a $70 million loan agreement (the "$70 Million Loan") with Open Joint-Stock Company Commercial Bank "Petrokommerts" (hereinafter "Petrokommerts"). The $70 Million Loan was personally guaranteed by Ms. Pirogova.

34. On December 25, 2009, Rizalti sought and received additional financing from Petrokommerts in the form of a $5,050,000 loan that was to be provided by 2 tranches. Ultimately,

11

$4,804,535.16 was loaned (the "$4.8 Million Loan" and together with the $70 Million Loan, the "Loans"). Again, Ms. Pirogova personally guaranteed Rizalti's obligations under the $4.8 Million Loan.

35. In 2010, Rizalti defaulted on both the $70 Million Loan and the $4.8 Million Loan. Thereafter, Petrokommerts applied to the Moscow Abritrazh Court for a judgment against Rizalti for the outstanding amounts owed. On August 10, 2010, the court entered a judgment in favor of Petrokommerts for $4,917,264.80 (plus applicable state fees) with respect to the $4.8 Million Loan and, on September 10, 2010 the court entered a judgment in favor of Petrokommerts in the amount of $75,365,789 (plus applicable state fees) with respect to the $70 Million Loan.

36. Additionally, Petrokommerts also filed claims in the Vidnovsky Court for the Moscow Region against Ms. Pirogova seeking to enforce her guarantees with respect to the Loans. The Court joined Rizalti, FRP LLC and InterMedia Holding LLC ("InterMedia") as parties to the action. FRP and InterMedia were mortgagors in connection with the Loans. During the pendency of the action, the parties negotiated and reached a settlement agreement that was approved by the court on December 23, 2010. Under the settlement agreement, Rizalti and Ms. Pirogova jointly and severally agreed to pay Petrokommerts by no later than February 28, 2011: (a) $82,036,824.92 and RUB 60,000 with respect to the $70 Million Loan, and (b) $5,493,682.28 and RUB 60,000 with respect to the $4.8 Million Loan.

37. After Rizalti and Ms. Pirogova failed to pay the amounts owed under the settlement agreement, on October 4, 2011, the Vidnovsky Court issued writs of execution against Rizalti and Ms. Pirogova with respect to the Loans.

38. During the intervening years, as Petrokommerts tried to enforce its judgments, it was discovered that Ms. Pirogova improperly used at least $25 million under the Loans in

connection with the development of the Madison Avenue Property. Additionally, portions of the Loans might have been used, at Ms. Pirogova's direction, by Madison 33 Owner, LLC to purchase the Madison Avenue Property from NMP-Group LLC.

39. In June 2014, an execution proceeding was commenced against Ms. Pirogova to enforce the judgments against her. In April 2016, these proceedings were suspended as a result of the commencement of an involuntary bankruptcy proceeding against Ms. Pirogova. *See, infra*, ¶¶ 47 to 54.

C. **An Involuntary Proceeding Against Rizalti is Commenced**

40. On September 6, 2011, upon the application of two creditors, Rizalti was placed under the supervision of the Moscow Arbitrazh Court. This is the first stage of the insolvency proceeding against legal entities under Russian Bankruptcy Law.

41. On January 17, 2012 the Moscow Arbitrazh Court included Petrokommerts' claim into the register of creditors for Rizalti in the principal amount of approximately RUB 2,543,106,177 (approximately $45 million) plus penalties in the amount of RUB 340,102,130 (approximately $6 million).

42. As a result of a foreclosure sale of property in Russia mortgaged by third parties, FRP and InterMedia, to secure the $70 Million Loan, Petrokommerts recovered RUB 1,259,128,066 (approximately $22.3 million) and its claim against Rizaltie was reduced to approximately RUB 1,283,982,111 (approximately $22.7 million) plus penalties of about RUB 340,102,130 RUB (approximately $6 million).

43. On June 15, 2015 Petrokommerts was merged into Public Joint-Stock Company "Bank Otkritie Financial Corporation" ("Otkritie") and Otkritie continues to assert Petrokommerts claims against Rizalti and Ms. Pirogova.

Pg 14 of 19

44. On April 26, 2016 the Moscow Arbitrazh Court issued a decision in the Rizalti insolvency proceeding finding Ms. Pirogova in her capacity as officer of Rizalti liable for damages in the amount of RUB 139,298,453 ($2.4 million) caused to Rizalti.

D. **The Criminal Proceedings Against Ms. Pirogova**

45. In September 2015, Otkritie filed an application to commence criminal proceedings against Ms. Pirogova, in her capacity as the former executive of Rizalti, on large-scale credit fraud charges. A claim for large scale credit fraud exists where there was an embezzlement of funds by a borrower who knowingly provided false or incorrect information to a bank in order to obtain more than RUB 6 million ($106,000). Article 159.1, Part 4, Russian Criminal Code. The Russian criminal court accepted the application and on January 31, 2017 placed Ms. Pirogova on a "wanted list" in connection with the charges.

46. On March 23, 2017 Ms. Pirogova was indicted for large scale credit fraud. Although Ms. Pirogova initially fled from the police, she was ultimately taken into custody in Moscow in or around September 2017 to be interrogated. After her interrogation, the police directed Ms. Pirogova, and she agreed and undertook, not to leave the country.

E. **An Involuntary Proceeding Against Ms. Pirogova is Commenced**

47. On October 12, 2015 an involuntary bankruptcy case was commenced against Ms. Pirogova by Public Joint-Stock Company Bank VTB 24 ("VTB") in the Moscow Arbitrazh Court based on RUB 1,048,292,175 ($18.5 Million) claim owed to VTB under certain credit agreements.

48. On March 25, 2016 the Moscow Arbitrazh Court entered an order granting the application, initiating a debt restructuring procedure, and appointing Mr. Rozhkov as Ms. Pirogova's financial administrator (the "Commencement Order"). A true and correct copy of the Commencement Order is attached hereto as Exhibit B. To the best of my knowledge, information and belief the insolvency proceeding initiated against Ms. Pirogova in Russia is the only foreign

14

(non-US) proceeding currently pending with respect to Ms. Pirogova in accordance with section 1515(c) of the United States Bankruptcy Code.

49. The notice of the creditors' claims bar date was published on April 2, 2016 in the "Kommersant" newspaper.

50. On April 28, 2016 Otkritie submitted a claim with the Moscow Arbitrazh Court against Ms. Pirogova based on her two personal guarantees on the Loans. On June 30, 2016 the Moscow Arbitrazh Court accepted Otkritie's claim in full and included it in the register of claims for Ms. Pirogova in the amount of RUB 1,283,982,111 Rubles ($22.7 Million) for principal and interest plus a claim for penalties in the amount of RUB 340,102,130 Rubles ($6 Million).

51. On August 2, 2016, Mr. Rozhkov presided over Ms. Pirogova's first meeting of creditors. At the meeting of creditors, it was decided that Mr. Rozhkov should apply to court to have Ms. Pirogova declared bankrupt and for the Moscow Arbitrazh Court to initiate liquidation procedures with respect to Ms. Pirogova's property.

52. On October 5, 2017, another meeting of creditors was held, at the time it was determined that the total amount of creditors' claims included into the register was RUB 2,526,381,896 Rubles ($44.7 million). Otkritie and VTB maintain the majority of the claims against Ms. Pirogova, and resultantly hold a majority of creditor votes with respect to any action to be taken on behalf of Ms. Pirogova's estate. Otkritie and VTB hold 50.8% and 42.2% respectively of the outstanding claims.

53. October 6, 2016 the Moscow Arbitrazh Court determined that a restructuring of Ms. Pirogova's debts was impossible and initiated a procedure to liquidate her property. By the same judgment the Moscow Arbitrazh Court appointed Mr. Rozhkov as Ms. Pirogova's financial

administrator to preside over the liquidation (the "Liquidation Order"). A true and correct copy of the Liquidation Order is attached hereto as Exhibit C.[5]

54. On November 7, 2017, upon the motion of Mr. Rozhkov, the time in which Mr. Rozhkov has to find and liquidate Ms. Pirogova's assets was extended until April 4, 2018. A motion will be filed in the Moscow Arbitrazh Court to further extend Mr. Rozhkov's time to find and liquidate Ms. Pirogova's assets.

IV.   **NEW YORK LEGAL PROCEEDINGS**

  A.   **The Madison Avenue Litigation**

55. On January 29, 2016 FGP 1, LLC and Serhii Yefimtsev filed a complaint against Luzia Dubrovsky in the Supreme Court of the State of New York, styled as case no. 650479/2016. The case concerns a dispute over the Madison Avenue Property and principally, whether Ms. Dubrovsky assigned to the plaintiffs 49% of her purported equity stake in 172 Madison NP Holding, LLC – the entity through which she holds an equity stake in Madison 33 Owner LLC, the owner of the Madison Avenue Property – in exchange for consideration worth at least $20 million. The plaintiffs seek a judgment declaring that they have the right to the 49% equity stake.

56. In connection therewith, the plaintiffs filed a "Nominee Agreement" by and between Ms. Dubrovsky and Ms. Pirogova stating that Ms. Dubrovsky's equity stake in the Madison Avenue property is in fact owned by Ms. Pirogova. The plaintiffs have since sought to amend their complaint to add Ms. Pirogova as a party to the litigation.

57. On August 9, 2017, the plaintiffs filed a motion for a temporary restraining order and preliminary injunction (the "TRO Motion"): (a) restraining defendant Ms. Dubrovsky from taking any action to convert, spend or transfer any distributions made to 172 Madison NP Member,

---

[5] Attached hereto as Exhibit D is a Translation Certificate, certifying that Exhibits B – C are true and accurate translations.

LLC by Madison 33 Partners, LLC, and (b) requiring Ms. Dubrovsky to cause any distributions made to 172 Madison NP Member, LLC by Madison 33 Partners, LLC on account of the sale of any of the condominiums at the Madison Avenue Property, or otherwise, to be deposited in a segregated escrow account pending a resolution of this action or unless otherwise ordered by the court. The Supreme Court issued a temporary restraining order pending a hearing on the TRO Motion.

58. After a hearing was held, the Supreme Court on November 18, 2017, granted the TRO Motion and ordered any distributions made to 172 Madison NP Member LLC or 172 Madison NP Holding, LLC be paid to the Supreme Court and the Temporary Restraining Order entered on August 9, 2017 to be extended until further order of the Supreme Court.

B.     **The Breach of Contract Action**

59. On June 27, 2017, Lana Aferzon filed a complaint against Ms. Pirogova alleging certain breaches of contract in the United States District Court for the Southern District of New York, styled as Case No. 17-04845. The complaint alleged that Ms. Pirogova defaulted under two promissory notes and currently owes Ms. Aferzon over $1,110,277.78.

60. Ms. Aferzon, through a process server, on multiple attempts tried to personally serve Ms. Pirogova at her apartment at 160 West 66th Street. The building's concierge indicated that Ms. Pirogova did in fact reside at 160 West 66th Street but refused to allow the process service access to her apartment to affix the legal papers to the door of Ms. Pirogova's apartment. At that time, the process server left the summons and complaint with the building's concierge.

61. Ms. Pirogova failed to respond to the complaint and on September 29, 2017, the Court entered a default judgment against Ms. Pirogova in the amount of $1,445,411.11 (inclusive of pre-judgment interest). A Writ of Execution was issued on October 18, 2017 in favor of Ms. Aferzon.

62.     Upon information and belief, Ms. Aferzon has been unable to collect upon her judgment.

C.     **The Landlord Tenant Dispute**

63.     On July 11, 2017, Ilona Itskov filed a complaint against Pirogova in the New York County Civil Court concerning a landlord/tenant dispute. At this time, neither I nor the Foreign Representative have any additional information concerning this matter.

V.     **ACTIONS IN FLORIDA AFFECTING THE DEBTOR'S PROPERTY**

64.     On October 26, 2017 American Express Centurion Bank ("American Express") filed a complaint against Ms. Pirogova in the Circuit Court for Miami Dade County, Florida and designated as Case No. 2017-025073 (the "American Express Action"). In the complaint, American Express alleges that Ms. Pirogova breached a credit account agreement between the parties by incurring credit-card charges in the amount of $50,357.23 and failing to pay American express for such charges. A summons has been issued but American Express, to date, has not successfully effectuated service on Ms. Pirogova. The American Express Action is currently still pending.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, information and belief, true and correct.

Executed this 28 day of March, 2018 in Moscow, Russia.

_____
Sergey S. Sokolov