<u>**FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

    NATALIA PIROGOVA,

              Debtor in a Foreign Proceeding.

Chapter 15

Case No. 18-10870 (SCC)

**MEMORANDUM DECISION AND ORDER DENYING RECOGNITION**
<u>**OF FOREIGN PROCEEDING UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**</u>

A P P E A R A N C E S :

**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
By:    Rick Antonoff, Esq.
        Evan J. Zucker, Esq.

*Counsel for Yuri Vladimirovich Rozhkov*
*in his capacity as Trustee and Foreign*
*Representative for the Debtor*

**LAW OFFICES OF VICTOR A. WORMS**
65 Broadway, Suite 750
New York, New York 10006
By:    Victor A. Worms, Esq.

*Counsel for Natalia Pirogova*

**BOIES SCHILLER FLEXNER LLP**
575 Lexington Avenue
New York, New York 10022
By:    Harlan A. Levy, Esq.
        Thomas H. Sosnowski, Esq.

*Counsel for M Investment Capital, LLC and Mark*
*Shvartsburd*

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

This contested chapter 15 proceeding presents an issue that the Bankruptcy Code does not explicitly address and as to which there is scant case law: how to determine the "center of main interests" (the "COMI") of an individual debtor. Here, the debtor Natalia Pirogova (the "Debtor" or "Ms. Pirogova"), who was born in Belarus, is a Russian citizen and is the holder of a "Green Card" which affords her permanent resident status in the United States. Her story is a colorful one; it includes, among other things, an outstanding Russian warrant for her arrest; alleged clandestine trips to Russia by way of the Belarus/Russia border; and an alleged trail of fraud, failed investments, and outstanding debt in both Russia and the United States. What brings her here to this Court is the petition of Yuri Vladimirovich Rozhkov, the trustee and foreign representative (the "Foreign Representative") appointed by the Moscow Arbitrazh Court (the "Russian Court") in Ms. Pirogova's pending insolvency proceeding (the "Russian Insolvency Proceeding") under the Russian Federation Federal Law No 127-FZ "On Insolvency (Bankruptcy)," which proceeding was commenced against her by one of her principal creditors, the Public Joint-Stock Company VTB 24, also known as "VTB Bank."

This is not Ms. Pirogova's first experience in a United States bankruptcy court; her single asset real estate entity, NMP-Group LLC, was a debtor in a chapter 11 proceeding in this Court in 2013. In the instant case – commenced some ten years after Ms. Pirogova obtained her Green Card, some five years after the commencement of the NMP-Group LLC chapter 11 case, and some three years after commencement of the Russian Insolvency Proceeding – the Foreign Representative asks this Court to find that, notwithstanding Ms. Pirogova's presence in the United States, which the Foreign Representative maintains is itself in furtherance of a fraud, Ms. Pirogova has continued her fraudulent activities in Russia and that Russia is her COMI. The

1

burden of proof with respect to the issue of COMI falls squarely on the Foreign Representative; for the reasons that follow, the Court finds that the Foreign Representative has failed to adduce sufficient evidence for the Court to conclude that the Debtor's COMI is Russia such that the Court can recognize the Russian Insolvency Proceeding as a foreign main proceeding, or, alternatively, that the Debtor has an "establishment" in Russia as contemplated by the applicable provisions of chapter 15 such that the Court can recognize the Russian Insolvency Proceeding as a foreign nonmain proceeding.

**<u>PROCEDURAL BACKGROUND</u>**

On March 30, 2018 (the "Petition Date"), the Foreign Representative filed (i) a form chapter 15 petition [Dkt. No. 1] pursuant to sections 1504 and 1515 of title 11 of the United States Code (the "Bankruptcy Code"), commencing a case under chapter 15 ancillary to the Russian Insolvency Proceeding; and (ii) a Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding [Dkt. No. 2] (the "Verified Petition" and, together with the form chapter 15 petition, the "Petition"), seeking recognition in this Court of the Russian Insolvency Proceeding as a foreign main proceeding, or, alternatively, as a foreign nonmain proceeding.

In support of the Petition, the Foreign Representative filed the Declaration of Sergey S. Sokolov [Dkt. No. 5] and the Declaration of Yuri Vladimirovich Rozhkov [Dkt. No. 7] (the "Rozhkov Decl.").  The Foreign Representative also filed a Motion for (i) Ex Parte Emergency Relief and (ii) Provisional Relief [Dkt. No. 6], together with the Declaration of Rick Antonoff [Dkt. No. 8] in support thereof.  On April 2, 2018, this Court issued a temporary restraining order [Dkt. No. 10] temporarily granting the requested provisional relief and ordering that (i) section 362 of the Bankruptcy Code shall apply with respect to the Debtor and her property within the territorial jurisdiction of the United States and (ii) the Stayed Actions (as defined therein) shall

be enjoined until, *inter alia*, the Court decides whether to grant the Petition and recognize the Russian Insolvency Proceeding.[1]

Ms. Pirogova filed opposition to the Petition [Dkt. No. 45] (the "Pirogova Opposition"), together with the Declaration of Natalia Pirogova [Dkt. Nos. 43-44] (the "Pirogova Decl.") in support thereof. Responses to the Petition were also filed by (i) M Investment Capital, LLC and Mark Shvartsburd (collectively, the "Shvartsburd Parties") [Dkt. No. 34];[2] (ii) 7400 Oceanside at Fisher Island Condominium Association, Inc. [Dkt. No. 36]; and (iii) Lana Aferzon [Dkt. No. 31].[3]

On September 6, 2018, the Foreign Representative filed a reply in further support of his requests for recognition and for provisional relief [Dkt. No. 52] (the "Reply"), together with the Declaration of Sergey S. Sokolov [Dkt. No. 53] and the Declaration of Evan J. Zucker [Dkt. No. 54] in support thereof. On September 26 and September 27, 2018, the Court conducted a two-day evidentiary hearing on the Petition (the "Hearing"), at which the Court heard (a) oral argument from counsel to the Foreign Representative and counsel to Ms. Pirogova and (b) witness testimony from (i) Mr. Sergey S. Sokolov, the Foreign Representative's Russian law expert; (ii) the Foreign Representative (through an interpreter); and (iii) Ms. Pirogova (through an interpreter).

---

[1]     On April 2, 2018, the Court also entered an order scheduling a hearing on the Petition for May 2, 2018 [Dkt. No. 11]. The hearing was consensually adjourned numerous times by the parties and ultimately scheduled for September 26 and September 27, 2018.

[2]     The Shvartsburd Parties have a pending suit against Ms. Pirogova captioned *M Investment Capital, LLC, et ano. v. FGP 1, LLC, et al.*, No. 650783-2018 (Sup. Ct. N.Y. Cnty.). *See* Shvartsburd Parties' letter to the Court [Dkt. No. 23] at 1. Although they objected to recognition of the Russian Insolvency Proceeding, the Shvartsburd Parties did not present documents or witnesses at the Hearing. *See* Shvartsburd Parties' Objection [Dkt. No. 34] at 1-2 (stating that Shvartsburd Parties would not present documents or witnesses to the Court because they were unsuccessful in obtaining documents concerning Ms. Pirogova's domicile and the nature and location of her business activities).

[3]     On August 30, 2018, counsel to Ms. Aferzon filed a motion to withdraw as her counsel [Dkt. No. 48], which motion was granted by order dated September 18, 2018 [Dkt. No. 56]. At the Hearing (as defined below), the opposition filed by Ms. Aferzon was stricken from the record without objection by any party. *See* Sept. 26, 2018 Hr'g Tr. 11:14-22.

Following the Hearing, the Foreign Representative filed a post-trial brief [Dkt. No. 60] (the "FR Post-Trial Br.") and Ms. Pirogova filed a post-trial brief [Dkt. No. 61] (the "Pirogova Post-Trial Br.").

For the reasons that follow, the Foreign Representative's request for recognition of the Russian Insolvency Proceeding as a foreign main proceeding, or alternatively, as a foreign nonmain proceeding, is denied.

## FACTUAL BACKGROUND

Ms. Pirogova was born in Belarus, which was part of the former U.S.S.R.[4]  On October 12, 2015, VTB Bank, a creditor of Ms. Pirogova, filed an application for the commencement of a personal bankruptcy proceeding against Ms. Pirogova in the Russian Court based on an alleged RUB 1,048,292,175 (USD $18.5 million) debt.[5]  On November 6, 2015, the Russian Court accepted VTB Bank's application for consideration and, on March 25, 2016, the Russian Court entered an order granting the application, initiating a debt restructuring procedure and appointing Mr. Rozhkov as Ms. Pirogova's financial administrator.[6]  After determining that a restructuring of Ms. Pirogova's debts was not possible, on October 6, 2016, the Russian Court initiated a procedure to liquidate Ms. Pirogova's property and appointed Mr. Rozhkov to preside over the liquidation of Ms. Pirogova's estate.[7]

On March 30, 2018, as set forth *supra*, the Foreign Representative filed the Petition in this Court seeking recognition of the Russian Insolvency Proceeding under chapter 15 of the Bankruptcy Code.

---

[4]    *See* Pirogova Decl. ¶ 23; Sept 27, 2018 Hr'g Tr. 49:17-18.
[5]    *See* Rozhkov Decl. ¶ 3; FR Ex. 2.
[6]    *See* Rozhkov Decl. ¶ 4; FR Ex. 2; Sept. 26, 2018 Hr'g Tr. 67:7-71:9.
[7]    *See* Rozhkov Decl. ¶ 5; FR Ex. 3; Sept. 26, 2018 Hr'g Tr. 72:25-74:21.

## DISCUSSION

Chapter 15 of the Bankruptcy Code defines "recognition" as "the entry of an order granting recognition of a foreign main proceeding or foreign nonmain proceeding under this chapter." 11 U.S.C. § 1502(7); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 331 (S.D.N.Y. 2008) (hereinafter, "*Bear Stearns II*"). The conditions for recognition of a foreign proceeding are set forth in section 1517 of the Bankruptcy Code, which provides that, subject to the public policy exception contained in section 1506, a court shall, after notice and a hearing, enter an order recognizing a foreign proceeding if:

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). Section 1517(b) of the Bankruptcy Code further states that a foreign proceeding shall be recognized

> (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or
>
> (2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending.

11 U.S.C. § 1517(b).

Only a foreign main proceeding or a foreign nonmain proceeding meeting the standards of section 1502 of the Bankruptcy Code is entitled to recognition. *See Bear Stearns II*, 389 B.R. at 331 (citing H.R. Rep. No. 109–31, at 114 (2005), as reprinted in 2005 U.S.C.C.A.N. 88, 173). "Recognition is not a 'rubber stamp exercise.'" *In re Creative Finance Ltd.*, 543 B.R. 498, 514 (Bankr. S.D.N.Y. 2016). It is the burden of the party seeking recognition of a foreign insolvency

proceeding to persuade the bankruptcy court that the location of the foreign proceeding is the

foreign debtor's COMI or, in the alternative, that the debtor has an establishment in that place;

and the petitioner must satisfy that burden by a preponderance of evidence.   *See In re*

*Millennium Glob. Emerging Credit Master Fund Ltd.*, 474 B.R. 88, 91 (S.D.N.Y. 2012); *In re*

*Fairfield Sentry Ltd.*, 2011 U.S. Dist. LEXIS 105770, at *9 (S.D.N.Y. Sept. 15, 2011).

### A.  Recognition of a Foreign Main Proceeding

#### 1.    Applicable Law

Pursuant to section 1502(4) of the Bankruptcy Code, a "'foreign main proceeding' means

a foreign proceeding pending in the country where the debtor has the center of its main

interests." 11 U.S.C. § 1502(4).  The location of the debtor's COMI is the sole criterion for

qualifying a proceeding as a foreign main proceeding.  *See Bear Stearns II*, 389 B.R. at 331-32

(citing the United Nations Commission on International Trade Law Guide to Enactment of the

Model Law on Cross–Border Insolvency).  The relevant time period for determining a debtor's

COMI is as of the time of the filing of the chapter 15 petition unless a court finds that the debtor

has manipulated its COMI in bad faith.  *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield*

*Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013).

Section 1516(c) of the Bankruptcy Code provides that, "[i]n the absence of evidence to

the contrary, the debtor's registered office, or habitual residence in the case of an individual, is

presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c); *see also In re*

*SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007).

The Code does not define "habitual residence," but courts have commonly acknowledged that

habitual residence is virtually identical to the concept of domicile, which is established by one's

"physical presence in a location coupled with an intent to remain there indefinitely."  *Lavie v.*

*Ran (In re Ran)*, 607 F.3d 1017, 1022 (5th Cir. 2010) (citing *Texas v. Florida*, 306 U.S. 398

6

(1939)); *accord In re Kemsley*, 489 B.R. 346, 353 (Bankr. S.D.N.Y. 2013) ("The term habitual

residence includes an element of permanence and stability and is comparable to domicile; it

connotes a meaningful connection to a jurisdiction, a home base where an individual lives, raises

a family, works and has ties to the community.").  The presumption established by section

1516(c) applies, however, only in the absence of evidence to the contrary.  *See In re SPhinX,*

*Ltd.*, 351 B.R. at 117 (stating that the statutory presumption of section 1516(c) may be of less

weight in the event of a serious dispute); *In re Millennium Glob. Emerging Credit Master Fund*

*Ltd.*, 474 B.R. at 92.  Where evidence is presented to the contrary, courts in this Circuit have

concluded that cannot rely solely upon the presumption regarding a debtor's habitual residence,

but rather they must consider all of the relevant evidence.  *Id.* (citing *In re Fairfield Sentry Ltd.*,

2011 U.S. Dist. LEXIS 105770, at \*9); *see also In re Kemsley*, 489 B.R. at 363 (holding that,

"when deciding COMI for an individual for whom the presumption of Section 1516(c) does not

readily apply, the Bankruptcy Court must weigh the facts on a case by case basis").

        In analyzing an individual's habitual residence, courts consider "(1) the length of time

spent in the location; (2) the occupational or familial ties to the area; and (3) the location of the

individual's regular activities, jobs, assets, investments, clubs, unions, and institutions of which

he is a member."  *In re Ran*, 607 F.3d at 1022-23 (citations omitted).  Courts may also consider

additional factors such as (i) the location of the debtor's primary assets; (ii) the location of the

majority of the debtor's creditors; and (iii) the jurisdiction whose law would apply to most

disputes.  *Id.* at 1024 (citing *In re Loy*, 380 B.R. 154, 162 (Bankr. E.D. Va. 2007)); *see also in re*

*Kemsley*, 489 B.R. at 360.  "The weight to be given to any one of these factors will likely vary

depending upon the relative importance of the factor to the debtor and the debtor's personal

circumstances."  *In re Kemsley*, 489 B.R. at 360-61.

### 2.    Analysis

The Foreign Representative argues that the Russian Insolvency Proceeding is a foreign main proceeding because Russia should be "deemed" to be Ms. Pirogova's COMI.[8]  First, he argues that Ms. Pirogova's "presumptive habitual residence" is Moscow because she "has several meaningful ties to Russia and certainly more than she has anywhere else."[9]  While the Foreign Representative acknowledges that Ms. Pirogova has been physically present in different locations – Moscow, Belarus, Israel, New York, and Florida – during the last seven years, he points out that she has residential property in only two of such locations, and, as of the Petition Date, none of these locations was her domicile.[10]  Accordingly, since Ms. Pirogova's domicile may be "in flux" and because she "has strong, meaningful, long term permanent connections to Moscow," the Foreign Representative argues that Russia should be "deemed" to be her habitual residence and presumed to be her COMI.[11]

In support of this argument, the Foreign Representative points to the following "indicia of COMI": as of the Petition Date, (i) Ms. Pirogova owned property in Moscow; (ii) Ms. Pirogova was evicted from her New York rental apartment; (iii) Ms. Pirogova's Florida vacation condominium in Fisher Island was the subject of a foreclosure proceeding; and (iv) Ms. Pirogova travelled "nomadically" through Russia, Israel, Belarus, and the United States.[12]  Additional evidence cited by the Foreign Representative to support a finding of Russia as Ms. Pirogova's COMI includes: (a) Ms. Pirogova has children, grandchildren, and friends in Moscow; (b) she maintains a current internal Russian passport; (c) she is, and has been, a long-term member of a

---

[8]      FR Post-Trial Br. Section II.
[9]      FR Post-Trial Br. ¶ 32.
[10] `   FR Post-Trial Br. ¶¶ 33-34.
[11]     FR Post-Trial Br. ¶¶ 35-36.
[12]     FR Post-Trial Br. ¶¶ 4, 23, 33-34 (citing FR Ex. 8; ECF 47-1 (Proposed Stipulation and Order between Foreign Representative and 7400 Oceanside at Fisher Island Condominium Association); Pirogova Decl. ¶¶ 23, 60; Sept. 27, 2018 Hr'g Tr. 72:17-73:14, 84:7-85:13).

Yacht Club (as defined below) in Moscow; and (d) she continues to maintain insurance for a

Mercedes-Benz in Russia.[13]

Finally, the Foreign Representative argues that, in determining the location of a debtor's

COMI, the Court should weigh factors such as the location of the debtor's assets and her

creditors and the expectations of interested third parties.[14]  Here, because Ms. Pirogova has (i)

assets in Russia and (ii) creditors in Russia who expect their claims to be adjudicated in Russia

through the Russian Insolvency Proceeding, the Foreign Representative argues that these factors

weigh decidedly in favor of Russia being designated as Ms. Pirogova's COMI.

In sharp contrast, Ms. Pirogova argues that the evidence presented by the Foreign

Representative at the Hearing does not establish that, as of the Petition Date, Russia was her

COMI, such that the Russian Insolvency Proceeding should be recognized as a foreign main

proceeding.  To the contrary, in both her declaration and in her testimony at the Hearing, Ms.

Pirogova repeatedly emphasized her intention to leave Russia permanently and establish her

domicile in the United States, citing actions she took in furtherance of that intention well prior to

the Petition Date.[15]  In support of her assertions, Ms. Pirogova offered into evidence (i) a Green

Card issued to Ms. Pirogova on April 11, 2008;[16] (ii) the United States Travel Document issued

to Ms. Pirogova on October 27, 2015;[17] (iii) the renewed United States Travel Document issued

---

[13]     FR Post-Trial Br. ¶¶ 9, 35 (citing Sept. 27, 2018 Hr'g Tr. 81:24-82:18, 92:17-20; FR Ex. 57; Sept. 26, 2018 Hr'g Tr. 117:1-118:12), ¶ 54 (citing FR Ex. 58; Sept. 26, 2018 Hr'g Tr. 125:1-126:8).

[14]     FR Post-Trial Br. ¶¶ 36-37 (citing *In re Ran*, 607 F.3d at 1023 (additional citations omitted)).

[15]     *See* Pirogova Decl. at ¶¶ 23-24 ("As evidence of my intention to permanently leave Russia and to establish my domicile in the United States, on April 11, 2008, I obtained permanent resident status in the United States. . . . As further evidence that I had no intention to reside in Russia, I allowed my Russian passport to expire on October 21, 2015 and I never renewed that Passport."); Sept. 27, 2018 Hr'g Tr. 85:6-13 (Q: ". . . you testified that your domicile is in the United States?" A: "Yes.  Q: "What did you mean by the term 'domicile'?"  A: "I expected myself to continue living here permanently."  Q: "And when did you make the decision to make the United States your domicile?" A: "That was in 2014.").

[16]     Pirogova Ex. 1; Sept. 27, 2018 Hr'g Tr. 49:22-50:1.

[17]     The Travel Document was issued to Ms. Pirogova with the surname "Priogova" instead of "Pirogova."  *See* Pirogova Ex. 3.  The Foreign Representative has asserted that Ms. Pirogova intentionally manipulated the spelling of her name so that she could travel undetected by border control and other law enforcement authorities.  *See* FR Post-

to Ms. Pirogova on February 8, 2018;[18] and (iv) a Florida Identification Card issued to Ms.

Pirogova on October 22, 2015, which lists the Fisher Island condominium as Ms. Pirogova's

address.[19]

      The Fifth Circuit's decision in *In re Ran* is particularly instructive here.  In *Ran*, the

Court of Appeals affirmed a lower court decision[20] denying an Israeli bankruptcy receiver's

petition for recognition under chapter 15 of the involuntary bankruptcy proceeding of debtor

Yuval Ran ("Mr. Ran"), which proceeding was pending in Israel.  *In re Ran*, 607 F.3d at 1019.

Mr. Ran, a director or shareholder of nearly one hundred Israeli companies, encountered

financial difficulty in the late 1990's.  He left Israel in April 1997 and, on June 16, 1997, an

involuntary bankruptcy proceeding was commenced against him in the Israeli District Court of

Tel Aviv-Jaffa.  *Id.*  Nearly ten years later, on December 11, 2006, the Israeli receiver filed a

petition in the United States Bankruptcy Court for the Southern District of Texas seeking

recognition of Mr. Ran's Israeli bankruptcy proceeding as a foreign main proceeding or,

alternatively, as a foreign nonmain proceeding under chapter 15 of the Bankruptcy Code.  *Id.* at

1020.  As in the instant case, the primary question before the bankruptcy court was whether or

not Mr. Ran had his COMI, or, alternatively, an establishment, in Israel at the time the petition

was filed, such that the court should recognize the Israeli insolvency proceeding under chapter

15.  The bankruptcy court found that the Israeli bankruptcy proceeding did not qualify as foreign

---

Trial Br. ¶¶ 21-22.  At the Hearing, Ms. Pirogova testified that the misspelling of her surname was a mistake by the Department of Homeland Security.  *See* Sept. 27, 2018 Hr'g Tr. 59:15-60:5.  In support of her assertion, Ms. Pirogova submitted into evidence copies of Appointment Notices sent to her from the Department of Homeland Security which correctly spells her name as "Pirogova."  *See* Pirogova Ex. 7.  The Court declines to address the allegations of intentional misspelling as they are not relevant to the determination of COMI.

[18]      The renewed Travel Document was also issued to Ms. Pirogova with the surname "Priogova."  *See* Pirogova Ex. 4.

[19]      *See* Pirogova Ex. 15; Sept. 27, 2018 Hr'g Tr. 71:7-22.

[20]      In *Ran*, the Fifth Circuit affirmed a decision of the United States District Court for the Southern District of Texas, which court had affirmed a decision of the United States Bankruptcy Court for the Southern District of Texas.  *In re Ran*, 390 B.R. 257 (Bankr. S.D. Tex. 2008), *aff'd sub nom., Lavie v. Ran*, 406 B.R. 277 (S.D. Tex. 2009), *aff'd*, 607 F.3d 1017 (5th Cir. 2010).

main or as a foreign nonmain proceeding and denied recognition, which decision was ultimately affirmed by the Fifth Circuit. *Id.* at 1019-20.

In analyzing Mr. Ran's COMI, the Fifth Circuit weighed the facts placed into evidence by the Israeli receiver in support of the contention that Israel was Mr. Ran's COMI (*i.e.*, that Mr. Ran's creditors were located in Israel and that his principal assets were being administered in the Israeli bankruptcy proceeding, which was initiated in Israel under Israeli law) against the following facts: (i) Mr. Ran and his family left Israel nearly a decade prior to the filing of the chapter 15 petition; (ii) Mr. Ran had no intention of returning to Israel; and (iii) Mr. Ran was a permanent legal resident of the United States and his children were U.S. citizens. The Court determined that the evidence proffered by the Israeli receiver, when weighed against these facts, was insufficient to establish by a preponderance of the evidence that Ran's COMI was in Israel. *Id.* at 1024.[21]

So too here. The Court finds that the Foreign Representative has failed to meet his burden to prove by direct evidence that Ms. Pirogova's COMI at the time of Petition Date was Russia. The evidence proffered at the Hearing was insufficient to provide a basis on which the Court can conclude that, as of the Petition Date, Ms. Pirogova's domicile or habitual residence was Russia, particularly when weighed against (i) Ms. Pirogova's stated intention to leave Russia permanently in 2008 and never reside there again;[22] (ii) the fact that Ms. Pirogova obtained

---

[21]        The Fifth Circuit also considered whether Mr. Ran's Israeli bankruptcy proceeding met the definition of a foreign nonmain proceeding. The Court determined that Mr. Ran did not have an establishment in Israel because he did not have a place of operations in Israel and had not been carrying on nontransitory economic activity there when the chapter 15 petition was filed. *Id.* at 1027-28. Likening a corporation's place of operations to an individual's having a secondary residence or a place of employment in a particular country, the Fifth Circuit found that Mr. Ran had neither in Israel as of the petition date. *Id.* at 1027. In addition, the Fifth Circuit concluded that the existence of (a) the involuntary Israeli bankruptcy proceeding (commenced after Mr. Ran left Israel) and (b) Mr. Ran's economic activity in Israel prior to the time the petition was filed was insufficient evidence to enable the court to conclude that Ran carried out nontransitory economic activity in Israel at the time the petition was filed. *Id.* at 1028.

[22]        *See* n.15, *supra*.

permanent residence status in the United States in 2008;[23] and (iii) the absence of direct evidence that Ms. Pirogova had a habitual residence in Russia at the time of the Petition Date.

The Court observes that the Foreign Representative places particular emphasis on Ms. Pirogova's ownership of an apartment located at Verhniye Polya street, 14, Apt. 266, Moscow, Russia (the "Moscow Apartment") in order to support his assertion that Russia is Ms. Pirogova's COMI.[24]  While Ms. Pirogova appears to be listed as the owner of the Moscow Apartment on the official records for the Federal Service for State Registration, Cadastre and Cartography for Moscow,[25] the Foreign Representative has offered no evidence that Ms. Pirogova maintains such apartment as her habitual residence.  Indeed, the Foreign Representative offered no direct evidence whatsoever that anyone, including Ms. Pirogova, has occupied the apartment during any time period relevant to a determination of her COMI.  To the contrary, at the Hearing, Ms. Pirogova testified that (i) she no longer owns the Moscow Apartment; (ii) she believes the apartment was seized by the bank approximately five years prior to the Hearing because she did not pay the mortgage; (iii) she has not returned to the Moscow Apartment since she learned of such seizure and has not lived there for "a very long time;" and (iv) she had no furniture or personal effects in the apartment.[26]

While the Foreign Representative testified that on two or three occasions he visited the building in which the Moscow Apartment is located "as part of the investigative measures to

---

[23]     *See id.*

[24]     *See* FR Ex. 54; Sept. 26, 2018 Hr'g Tr. 86:20-87:15.  Section 4.1.1 of FR Ex. 54 indicates that there is a restriction of rights and encumbrance on the Moscow Apartment in the form of a "seizure" registered on February 13, 2013 based on a ruling dated November 27, 2012 of the Surgut Municipal Court of Khanty-Mansiysk Autonomous District Yurgra.  *See* FR Ex. 54, § 4.1.1.  The Foreign Representative concedes that the Moscow Apartment is subject to a bank lien; however, relying solely on Ms. Pirogova's testimony, he asserts that the term "seizure" merely places a limitation on Ms. Pirogova's use of the Moscow Apartment and is not equivalent to repossession, foreclosure, or transfer of ownership, and, therefore, Ms. Pirogova still owns the Moscow Apartment notwithstanding the "seizure."  *See* FR Post-Trial Br. ¶¶ 10, 49 (citing Sept. 27, 2018 Hr'g Tr. 107:15-17, 108).

[25]     FR Ex. 54.

[26]     *See* Sept. 27, 2018 Hr'g Tr. 76:6-78:13.

12

seek out information on the property of the Debtor," he admitted in his testimony that he never

entered the Moscow Apartment to determine whether or not Ms. Pirogova was living there.[27]

Additionally, the Foreign Representative offered into evidence three utility bills addressed to Ms.

Pirogova at the Moscow Apartment;[28] however, the Utility Bills do not provide any conclusive

evidence that Ms. Pirogova inhabited or otherwise used the Moscow Apartment as her habitual

residence as of the Petition Date.  Even though the bills pertain to months subsequent to the

Petition Date, each bill indicates on its face that utility payments for the Moscow Apartment

have not been paid for several years – since December 31, 2015 with respect to electricity and

since April 11, 2013 with respect to water.[29]  Accordingly, based on the inconclusive evidence

introduced by the Foreign Representative with respect to the Moscow Apartment, the Court

cannot find that Ms. Pirogova's habitual residence on the Petition Date was Russia.[30]

        As this Court observed in *In re Kemsley*, challenges arise in applying recognition

principles to an individual whose life is not tied to one place, particularly when such individual

has made multiple moves.  489 B.R. at 355 (observing that an individual debtor may not have

lived in any one place with the intention of establishing the kind of residential stability

contemplated in section 1516(c)).  Ms. Pirogova's case presents such a challenge.  Aside from

the evidence with respect to the Moscow Apartment, discussed *supra*, the Foreign Representative

points to additional "indicia of COMI" to attempt to establish that Russia is Ms. Pirogova's

---

[27]       *See* Sept. 26, 2018 Hr'g Tr. 96:13-23; Sept. 27, 2018 Hr'g Tr. 27:2-7.
[28]       *See* FR Exs. 70-72 (collectively, the "Utility Bills").  Exhibit 70, an electricity bill, is dated April 2018;
Exhibit 71, a water bill, is dated May 2018; and Exhibit 72, a water bill, is dated June 2018.
[29]       *See* FR Exs. 70-72; Sept. 27, 2018 Hr'g Tr. 27:8-29:22.
[30]       Even if the Court were to determine that the Moscow Apartment is Ms. Pirogova's current place of
residence because she no longer has a residence in New York or in Fisher Island, as the Foreign Representative
suggests, such a finding would not be sufficient to enable the Court to determine that Russia was Ms. Pirogova's
habitual residence.  "Habitual residence is a term of art that . . . impl[ies] more than just the place where an
individual happens to be living at a particular time and has aspects of an intention to stay in the same location for the
foreseeable future unless and until something might occur to prompt or compel a change . . . ."  *Kemsley*, 489 B.R. at
353.

13

COMI. The Court finds that such evidence, even taken together, is inadequate to support a finding that Russia is the Debtor's COMI.

First, although the Court recognizes that a debtor's familial ties to a country may be a factor in determining an individual's COMI, *see*, *e.g.*, *Kemsley*, 489 B.R. at 352-54, the fact that Ms. Pirogova has family and friends in Russia is insufficient to establish that Russia was her COMI as of the Petition Date. Unlike the debtor in *Kemsley*, Ms. Pirogova did not express a desire to live near her son and grandchildren in Russia, nor was there any evidence introduced at the Hearing that Ms. Pirogova maintains a close relationship with anyone in Russia.[31] Likewise, there was no evidence presented that Ms. Pirogova frequently travelled to Russia via the open border between Russia and Belarus, as the Foreign Representative attempts to suggest.[32] That Ms. Pirogova acknowledges that she has the ability to cross the Russia/Belarus border using only her Russian travel documents[33] does not constitute proof that she did in fact do so; further evidence would be required for the Court to draw such a conclusion. Second, while Ms. Pirogova may in fact have creditors and assets located in Russia, as well as a pending Russian Insolvency Proceeding governed by Russian law, when such factors are weighed against the lack of direct evidence in the record that Ms. Pirogova's habitual residence as of the Petition Date was Moscow, they are insufficient to establish that Russia is Ms. Pirogova's COMI. Moreover, the Foreign Representative has acknowledged in the Petition that Russia is not the only country in which Ms. Pirogova has creditors and lawsuits pending against her.[34]

---

[31]    To the contrary, Ms. Pirogova stated that she and her son have not spoken in nearly five years and that she has no contact with her grandchildren. *See* Pirogova Decl. ¶ 57. Additionally, Ms. Pirogova testified at the Hearing that she is married to an American citizen. *See* Sept. 27, 2018 Hr'g Tr. 68:18-21.
[32]    *See* FR Post-Trial Br. ¶ 20.
[33]    *See* Sept. 27, 2018 Hr'g Tr. 103:4-14.
[34]    *See* Petition at ¶¶ 27-37 (stating that Ms. Pirogova has four lawsuits pending against her in the United States).

14

Lastly, the Foreign Representative contends that Ms. Pirogova's COMI is Russia because she has been perpetuating a fraud, avoiding debts, and evading authorities in Russia.[35] Specifically, the Foreign Representative asserts that (i) Ms. Pirogova owned and controlled a company named Rizalti-Plus-DKD which borrowed over $75 million from Petrokommerts (the "Rizalti Loan") based on "knowingly unreliable" information in 2007 and never repaid such loan; (ii) civil and criminal efforts were commenced in Russia against Ms. Pirogova to recover funds related to the Rizalti Loan; and (iii) Ms. Pirogova fled Russia using travel documents bearing different spellings of her name, in defiance of Russian authorities' directive to remain in the country.[36] Regardless of whether or not Ms. Pirogova engaged in fraudulent or criminal activity,[37] the allegations relate to activity well prior to the Petition Date and have no bearing on the Debtor's COMI as of the Petition Date, which is the only relevant date for purposes of recognition.[38]

The Foreign Representative asserts that denying recognition of the Russian Insolvency Proceeding would be contrary to the spirit of chapter 15 because it would suggest that "an individual who defrauds creditors and evades law enforcement authorities in her home country need only come to the United States, conceal her interest in property through holding companies and nominee agreements, and thereby prevent a duly appointed bankruptcy administrator from

---

[35]    *See* FR Post-Trial Br. ¶¶ 38-44; FR Exs. 51-52.

[36]    *See* FR Post-Trial Br. ¶ 16 (citing FR Exs. 40, 51, and 52), ¶¶ 38-44.

[37]    Additional evidence adduced at the Hearing causes the Court to observe that Ms. Pirogova may in fact have committed bankruptcy fraud in the NMP-Group LLC chapter 11 in this Court (*see* FR Post-Trial Br. ¶ 17; FR Ex. Nos. 67, 68, 69 and 83). The Office of the United States Trustee is aware of this evidence.

[38]    There is no evidence in the record that Ms. Pirogova attempted to manipulate her COMI during the period between the commencement of the Russian Insolvency Proceeding and the Petition Date such that the Court would need to examine evidence with respect to that time period as well. *See In re Fairfield Sentry*, 714 F.3d at 133 ("To offset a debtor's ability to manipulate its COMI, a court may also look at the time period between the initiation of the foreign liquidation proceeding and the filing of the Chapter 15 petition."). That Ms. Pirogova apparently fled Russia (prior to the commencement of the Russian Insolvency Proceeding) rather than face arrest is not evidence of an attempt to manipulate COMI. In addition, on the record of the Hearing, the Foreign Representative conceded that, in the instant case, COMI is to be determined as of the Petition Date. *See* Sept. 26, 2018 Hr'g Tr. 9:25-10:4.

recovering her assets for the benefit of all creditors."[39]  The Court disagrees.  Courts in the

Second Circuit and elsewhere have emphasized that examining a debtor's COMI at the time the

petition for recognition is filed fulfills Congress' purpose for implementing chapter 15 – to

harmonize transnational insolvency proceedings.  *See In re Fairfield Sentry Ltd.*, 714 F.3d at 135

("Most courts in this Circuit and throughout the country appear to have examined a debtor's

COMI as of the time of the Chapter 15 petition.") (collecting cases); *In re Ran*, 607 F.3d at 1025

("[E]xamining a debtor's COMI at the time the petition for recognition is filed fulfills Congress's

purpose for implementing Chapter 15.").  As the Fifth Circuit has specifically noted, an inquiry

into a debtor's past operations prior to the time of the petition might lead to conflicting COMI

determinations and the possibility of competing main proceedings, thus defeating the purpose of

using the COMI construct.  *See id*.  Ms. Pirogova's past conduct is not a factor the Court is

required to consider in evaluating whether the Russian Insolvency Proceeding can be recognized

as a foreign main proceeding.  Contrary to the Foreign Representative's suggestion that Ms.

Pirogova is attempting to "outsmart" the Court, this is, for better or worse, a case in which the

Foreign Representative is simply unable to carry the burden of proof imposed by Congress on a

foreign representative who wishes to avail himself of the relief available under chapter 15.

Accordingly, for all of the foregoing reasons, the Court concludes that the Foreign

Representative has not met his burden to establish by a preponderance of the evidence that Ms.

Pirogova's COMI is in Russia; as such, the Russian Insolvency Proceeding cannot be recognized

as a foreign main proceeding under section 1502 of the Bankruptcy Code.

---

[39]      Reply ¶ 3.

**B. Recognition of a Foreign Nonmain Proceeding**

**1.    Applicable Law**

Pursuant to section 1502(5) of the Bankruptcy Code, a "'foreign nonmain proceeding' means a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). "Whether an establishment exists is 'essentially a factual question, with no presumption in its favor.'" *In re Kemsley*, 489 B.R. at 362 (citing *In re Ran*, 607 F.3d at 1026). Section 1502(2) defines "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). The terms "place of operations" and "nontransitory economic activity" are not defined in the Code.

Once again, there is limited case law analyzing these terms in the context of an individual foreign debtor. Analyzing the legislative history of chapter 15 with respect to "establishment," the Fifth Circuit in *In re Ran* determined that, in the context of an individual debtor (rather than a corporate debtor), "a place of business could conceivably align with the debtor having a secondary residence or possibly a place of employment in the country where the receiver claims that he has an establishment." *In re Ran*, 607 F.3d at 1027. The mere presence of an asset in a given location, by itself, however, is insufficient to constitute a place of operations; to have a place of operations, the proposed debtor must engage in some economic activity in such location as of the petition date, whether the said activities are commercial, industrial or professional. *Id*. (citations omitted); *see also In re Creative Finance*, 543 B.R. at 520 ("The terms 'operations' and 'economic activity' require a showing of a local effect on the marketplace, more than mere incorporation and record-keeping and more than just the maintenance of property."). "The 'bar is rather high' to prove that a debtor has an establishment." *In re Kemsley*, 489 B.R. at 362 (citing *In re Ran*, 607 F.3d at 1026-27) (additional citations omitted).

17

### 2.    Analysis

The Foreign Representative submits that, if the Russian Insolvency Proceeding is not recognized as a foreign main proceeding, it should be recognized as a foreign nonmain proceeding because Ms. Pirogova engaged in ongoing nontransitory economic activity in Russia and had assets in Russia as of the Petition Date.[40]  He argues that English courts have found that the presence of a single asset together with minimal management of such asset is sufficient to constitute "nontransitory economic activity" for purposes of satisfying the "establishment" standard for recognition of a nonmain proceeding.  *See* FR Post-Trial Br. ¶ 46 (citing *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 84 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 88 (S.D.N.Y. 2012)).  According to the Foreign Representative, "what exactly constitutes an economic activity is quite expansive under the Model Law and can include just a single asset coupled with some level of economic activity."[41]

As evidence of Ms. Pirogova's establishment in Russia, the Foreign Representative points to (i) the Utility Bills in Ms. Pirogova's name found at the Moscow Apartment, which he argues illustrate the "continuous and ongoing provision of services to her apartment and the costs associated with those services;"[42] (ii) Ms. Pirogova's membership in the Association of Owners of Vessels "Yacht-Club Zolotoy Gorod" (the "Yacht Club"), which is "located" in Moscow, as evidenced by an extract dated August 28, 2018 from the Unified State Register of Legal Entities for Non-Profit Partnership;[43] (iii) Ms. Pirogova's 100% ownership of a Russian company named Taurus LLC, which became the subject of an insolvency proceeding in 2017 and is currently in

---

[40]        *See* FR Post-Trial Br. Section III.
[41]        FR Post-Trial Br. ¶ 46.
[42]        FR Ex. 70-72.
[43]        FR Ex. 57.

liquidation;[44] and (iv) two automobiles (a Mercedes Benz and a Russian-made "VAZ") owned by Ms. Pirogova, one of which appears to be currently insured.[45]

Ms. Pirogova argues that none of the evidence proffered by the Foreign Representative has any probative value in meeting the statutory requirement of an establishment in Russia such that the Russian Insolvency Proceeding should be recognized as a foreign nonmain proceeding. She asserts that (i) the Utility Bills alone (assuming they even establish use of the Moscow Apartment at all) do not indicate that the utility charges were generated by *her* use of the apartment, as the Foreign Representative did not demonstrate that (or even attempt to investigate whether) Ms. Pirogova resided there, either as a primary or as a secondary residence;[46] (ii) the Yacht Club register indicates that Ms. Pirogova was a founding member but it does not prove that she was an active member of the club as of the Petition Date, and the Foreign Representative did not present any additional evidence as to her current membership status;[47] (iii) her ownership of Taurus LLC is irrelevant because the company is in the late stages of bankruptcy and it is not conducting economic activity in Russia;[48] and (iv) the evidence regarding the two automobiles registered in Ms. Pirogova's name indicates that both cars have been "seized" and that a "ban on registration acts" had been imposed on the VAZ in 2012 and on the 22-year old Mercedes-Benz in 2014.[49]

---

[44]    FR Ex. 56.

[45]    FR Post-Trial Br. ¶ 6, 11; FR Ex. 58. Although the Foreign Representative adduced evidence that Ms. Pirogova owned the VAZ in 2016 at the Hearing, he concedes in his Post-Trial Brief that Ms. Pirogova's ownership of the VAZ is unclear. *See* FR Post-Trial Br. ¶ 14.

[46]    *See* Pirogova Post-Trial Br. at 10-13 (citing Sept. 27, 2018 Hr'g Tr. 27:2-28:4); *see also* Sept. 26, 2018 Hr'g Tr. 96:13-23 (Q: "Did you ever have occasion to visit the [Moscow Apartment]?" A: "Yes, I had the opportunity to visit that particular building, but that was quite a while ago." Q: "How many times, about, if you can remember?" A: "This is a multi-apartment building. I went there two or three times, not a single time was I able to actually enter the apartment.").

[47]    *See* Pirogova Post-Trial Br. at 14-15.

[48]    *See* Pirogova Post-Trial Br. at 17.

[49]    *See* Pirogova Post-Trial Br. at 13-14; Sept. 27, 2018 Hr'g Tr. 19:20-24:5.

The Foreign Representative's evidence is insufficient to satisfy the two prongs of the "establishment" requirement set forth in the statute – that the Debtor had a place of operations in Russia as of the Petition Date and that she carried out a nontransitory economic activity from such place. First, the Court has been presented with inadequate direct evidence that the Moscow Apartment could be considered a "place of operations" within the meaning of section 1502(2). As discussed *supra*, the Foreign Representative has introduced no evidence (i) as to the time period in which Ms. Pirogova allegedly resided in the Moscow Apartment; (ii) as to whether she continues to use the apartment as a secondary residence; or (iii) even as to whether she has been present in the Moscow Apartment at all in the past several years. While a secondary residence or a place of employment can be sufficient to constitute a place of operations, the Foreign Representative has presented no evidence that the Moscow Apartment served as either one to Ms. Pirogova. That the Moscow Apartment is still registered in Ms. Pirogova's name is inadequate to establish that the apartment was her secondary residence on the Petition Date, particularly in light of Ms. Pirogova's testimony that she had not been there in years and that she believes the apartment had been seized by the bank.[50]

Even if the Court were to conclude that this single asset in the debtor's name in Russia was sufficient to constitute a "place of operations" within the meaning of section 1502(2), as the Foreign Representative suggests, the Foreign Representative must also prove that Ms. Pirogova carried out nontransitory economic activity in Russia from such place. *See In re Ran*, 607 F.3d at 1027-28 (noting that, even if the court were to conclude that the debtor possessed a place of operations in Israel at the time the petition was filed, because the debtor did not carry out any nontransitory economic activity in Israel, the second part of the establishment requirement was

---

[50]    *See* Sept. 27, 2018 Hr'g Tr. 76:6-23.

not met).  The Court finds that the Foreign Representative's scant evidence and conclusory

allegations are insufficient to prove that Ms. Pirogova carried out any nontransitory economic

activity in Russia at the time of the Petition Date such that Russia could be considered her

"establishment."

    The Foreign Representative's argument that Ms. Pirogova's ownership of the Moscow

Apartment "continues to generate economic activity in Moscow" because a reading of the Utility

Bills demonstrates utility services continue to be used each month and the utility companies

continue to extend credit to Ms. Pirogova for the value of such services[51] is a stretch, to say the

least.  The mere presence of the Utility Bills (which have not been paid since 2015 and 2013,

respectively)[52] does not, without more, support the conclusion that Ms. Pirogova occupied the

Moscow Apartment, let alone that she generated economic activity in Russia, as of the Petition

Date.  The Court is similarly not persuaded that Ms. Pirogova generates economic activity

through her membership in the Yacht Club because, as the Foreign Representative claims, the

Yacht Club "generates economic activity through membership dues and the maintenance of the

club."[53]  There is no support in the record whatsoever for this conclusion.  First, as noted by

counsel to Ms. Pirogova, nothing on the face of the Unified State Register of Legal Entities,

which was submitted into evidence, indicates that Ms. Pirogova's membership in the Yacht Club

was current and active on the Petition Date,[54] and nothing further was submitted by the Foreign

Representative in that regard.  Moreover, even assuming that Ms. Pirogova was a member of the

Yacht Club on the Petition Date, there is no evidence supporting the Foreign Representative's

conclusory assumptions (i) that Ms. Pirogova paid membership dues or contributed to the

---

[51]     FR Post-Trial Br. ¶ 50.
[52]     *See* FR Exs. 70-72; Sept. 27, 2018 Hr'g Tr. 27:2-29:22.
[53]     *See* FR Post-Trial Br. ¶ 53.
[54]     *See* Pirogova Post-Trial Br. at 14-15.

21

maintenance of the Yacht Club at that time or (ii) that the Yacht Club generates economic

activity.  Indeed, the Foreign Representative conceded that he never visited the Yacht Club and

has very limited knowledge about it.[55]  The Court also finds that Ms. Pirogova's alleged failure

to de-register two "seized" cars (or that she continues to hold insurance for one of such cars) to

be far too tenuous a link to any nontransitory economic activity.

In addition, the Court is not persuaded by the Foreign Representative's contention that

Ms. Pirogova's entitlement to participate in the insolvency proceeding of Taurus LLC or that her

governance rights and interests in the company constitute nontransitory economic activity in

Moscow.[56]  As the term implies, "economic activity" requires a showing of a local effect on the

marketplace.  *See In re Creative Finance*, 543 B.R. at 520.  As the Foreign Representative

himself acknowledges, some level of "minimal management" by the debtor must be present.[57]

Ms. Pirogova's entitlement to participate in the insolvency proceeding of Taurus LLC, without

more – such as proof of her active participation in such bankruptcy proceedings – does not rise to

the level of "minimal management" of her interest in Taurus LLC.

Finally, the existence of the Russian Insolvency Proceeding alone fails to meet the

statutory requirement of an establishment.  *See, e.g., In re Ran*, 607 F.3d at 1028 (concluding

that the existence of the involuntary Israeli bankruptcy proceeding alone was insufficient

evidence to enable the court to conclude that Ran carried out nontransitory economic activity in

Israel).

For the foregoing reasons, the Court concludes that the Foreign Representative has failed

to meet his burden to demonstrate by a preponderance of the evidence that Ms. Pirogova had, on

---

[55]     *See* Sept. 27, 2018 Hr'g Tr. 34:10-14.
[56]     *See* FR Post-Trial Br. ¶52.
[57]     *See* FR Post-Trial Br. ¶ 46.

the Petition Date, an "establishment" in Russia within the meaning of sections 1502(2) and

1502(5) of the Bankruptcy Code such that the Russian Insolvency Proceeding should be

recognized as a foreign nonmain proceeding.

In her Opposition, Ms. Pirogova raised additional objections to the Petition with respect

to the following issues: (i) whether the Russian Insolvency Proceeding is a collective proceeding

meeting the definition of "foreign proceeding" under section 101(23) of the Bankruptcy Code

and (ii) whether recognition of the Russian Insolvency Proceeding is manifestly contrary to

United States public policy under section 1506 of the Code.[58]  Because the Court has already

determined that the Russian Insolvency Proceeding is neither a foreign main proceeding nor a

foreign nonmain proceeding, it need not address these issues.

## CONCLUSION

For all of the foregoing reasons, the Petition for recognition of the Russian Insolvency

Proceeding as a foreign main proceeding or, alternatively, as a foreign nonmain proceeding, is

denied.  The parties are directed to submit an order consistent with the foregoing.

Dated:  December 12, 2018
          New York, New York

/S/ Shelley C. Chapman
United States Bankruptcy Judge

---

[58]      *See* Pirogova Opp. at 10-13, 20-23.